<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CAROLYN SEGURA, Individually and as Administrator of the ESTATE OF SHAMIR SHAWN SEGURA, <br><br> Plaintiff, <br><br> v. <br><br> GREYSTONE PARK PSYCHIATRIC HOSPITAL, *et al.*, <br><br> Defendants. | Case No. 2:21-cv-11662 (BRM) (CLW) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6) by Defendant Greystone Park Psychiatric Hospital ("Greystone") and twelve

other Defendants: New Jersey Governor Philip D. Murphy ("Governor Murphy"), former New

Jersey Attorney General Gurbir Grewal ("Former AG Grewal"), Judith Persichilli ("Persichilli"),

Carole Johnson ("Johnson"), Valerie L. Mielke ("Mielke"), Tomika Carter ("Carter"), Teresa A.

McQuaide ("McQuaide"), Dr. Evaristo O. Akerele ("Dr. Akerele"), Dr. Harlan M. Mellk ("Dr.

Mellk"), Lisa Ciaston ("Ciaston"), James L. Frey ("Frey"), and Dr. Ijeoma J. Hassan ("Dr.

Hassan"), (collectively, the "State Defendants," and collectively with Greystone, "Defendants"[1]).

---

[1] Defendant Judith Persichilli is the Commissioner of the New Jersey Department of Health ("NJDOH"); Defendant Carole Johnson is the Commissioner of the New Jersey Department of Human Services ("NJDHS"); Defendant Valerie L. Mielke is the Acting Commissioner of the New Jersey Division of Mental Health and Addiction Services ("NJDMHAS"); Defendant Lisa Ciaston is the Legal Liaison for NJDMHAS; and the remaining State Defendants are all Greystone employees—Tomika Carter is the CEO of Greystone; Teresa A. McQuaide was the former acting

(ECF No. 63.) Plaintiff Carolyn Segura ("Plaintiff") opposed the motion. (ECF No. 64.) Defendants filed a reply. (ECF No. 65.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss[2] is **GRANTED**.

## I.    BACKGROUND

For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court applies this same standard on a motion to dismiss for lack of subject matter jurisdiction.[3] *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." (first citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975), and then citing *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003))). The Court may also consider any

---

CEO of Greystone; Dr. Evaristo O. Akerele is the Medical Director at Greystone; Dr. Harlan M. Mellk is the Acting Chief of Medicine at Greystone; James L. Frey is the Employee Relations Officer at Greystone; and Dr. Ijeoma J. Hassan is the Chief of Psychiatry at Greystone. (ECF No. 38 ¶¶ 21–30.)

[2] The Court notes that other defendants in this action including Greystone employee Danielle Debrah ("Debrah") and Greystone patient Rashid A. Davis ("Davis") are also named in the Third Amended Complaint ("TAC") but are not part of this motion to dismiss. (*See* ECF No. 38; ECF No. 63-1 at 1 n.1.)

[3] The Court applies this same standard on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction for facial attacks to subject matter jurisdiction only. *Compare In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (applying the same standard used for a motion to dismiss under Rule 12(b)(6) when reviewing a facial attack made under Rule 12(b)(1)), *with Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d. Cir. 2000) (explaining that "in a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction").

"document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises out of a fatal stabbing resulting in the death of Shamir Shawn Segura ("Segura") while he was an involuntarily committed patient at Greystone. (ECF No. 38 (Third Am. Compl.) ¶¶ 15, 52–69.) Greystone is a state-run psychiatric hospital located in Morris Plains, New Jersey. (*Id.* ¶¶ 3, 16.) On December 31, 2019, Davis used an exacto knife to stab Segura multiple times. (*Id.* ¶¶ 52, 57.) The first Greystone doctor who responded and arrived on scene provided emergency aid for approximately thirty minutes before pronouncing Segura dead. (*Id.* ¶ 52.) Plaintiff alleges Defendants are liable for Segura's death because they contributed to "inadequate safety precautions, dangerously inadequate staffing, failure of the one-to-one monitoring system, the failure to assure prompt ambulance response, and the dangerous depletion of the availability of medical equipment in the code carts," among other things. (*Id.* ¶ 53.)

Specifically, Plaintiff alleges, *inter alia*, Defendants (1) "removed lifesaving equipment from [Greystone], despite the repeated warnings from doctors, staff, and the public that this would lead to the loss of life"; (2) "failed to decrease ambulance response time"; (3) failed to direct the ambulance to the appropriate unit for Segura upon arrival; (4) failed to provide adequate "psychiatric coverage for [Segura's] unit as the psychiatrist ordinarily assigned was on vacation"; (5) "failed to insure that Defendant Rashid Davis would not possess dangerous weapons and through neglect, allowed [him] to possess an exacto knife" when they "knew or should have known of the dangerous propensities of Defendant Davis and the likelihood that he would cause serious bodily injury if he possessed a dangerous instrument"; and (6) failed to prevent the circumstances that led to Segura's fatal stabbing, including confusion among the Greystone employees on the

day of the stabbing stemming from conflicting orders regarding Segura's scheduled transfer to another unit within Greystone. (*See id.* ¶¶ 52–69.) Plaintiff alleges that one of Segura's treating doctors (non-party Dr. Margarita Gormus ("Dr. Gormus")) arranged for Segura to be transferred to a different unit within Greystone because he "was deemed a 'snitch' by other patients with a violent criminal history." (*Id.* ¶ 66.) Before this transfer, a psychiatrist at Greystone ordered Segura to be on "one-to-one observation, which requires a mental health technician to closely monitor the patient at all times[,]" in order "to protect [Segura] from violent reprisal by other patients." (*Id.* ¶¶ 58, 66.) Plaintiff further alleges Debrah, a Greystone employee, "had developed an inappropriate relationship with Defendant Davis in violation of protocol, procedure and policy"; that Debrah and Davis "would meet at various locations in [Greystone] including the mailroom to which Defendant Debrah had access"; and that Debrah "had access to an exacto knife in the mailroom[.]" (*Id.* ¶ 57.)

On May 24, 2021, Plaintiff filed a Complaint alleging certain claims against Defendants. (ECF No. 1.) On November 12, 2021, Plaintiff filed a Second Amended Complaint ("SAC"[4]) against Defendants. (ECF No. 17.) On December 10, 2021, Defendants filed a motion to dismiss the SAC. (ECF No. 23.) On December 16, 2021, the Court issued a text order directing the parties to "engage in preliminary discovery targeted to identify the proper parties and positions" for this action. (ECF No. 24.) Subsequently, Defendants' motion to dismiss the SAC was administratively terminated pending the outcome of this preliminary discovery. (*See* ECF No. 25.)

---

[4] Plaintiff labeled this complaint as the "Second Amended Complaint" even though it served as Plaintiff's first amended complaint.

On December 19, 2022, Plaintiff[5] filed a Third Amended Complaint ("TAC"[6]) bringing the following claims against Greystone and the State Defendants in both their individual and official capacities: "Constitutional Violations" under the Federal Civil Rights Act, 42 U.S.C. § 1983 (Count I), "Violation of the Due Process and Equal Protection Clause of the Fifth and Fourteenth Amendment and the Violation of the Eighth Amendment of the United States Constitution" under 42 U.S.C. §§ 1983, 1985 (Count II), "Violations of the Americans with Disabilities Act" (Count III), "Violations of the Rehabilitation Act" (Count IV), "Violation of the Patient's Bill of Rights" under N.J. Stat. Ann. § 30:4-24.2 (Count V), "Violations of New Jersey Involuntary Psychiatric Commitment Laws, N.J.S.A. 30:4-27.1 to 27.23 and R. 4:74-7" (Count VI), "Negligence" (Count VII), "Survivorship Action" under the New Jersey Survivors Act, N.J. Stat. Ann. § 2A:15-3 (Count VIII), and "Wrongful Death" (Count IX). (ECF No. 38 ¶¶ 20, 70– 137.) Plaintiff seeks compensatory and punitive damages, as well as "an award of all fees and costs (including counsel fees, interest, and legal fees)" on all federal and state law counts where so permitted, "and for pre-judgment interest; and for such further and other relief the [C]ourt deems just, equitable, and proper." (*Id.* ¶¶ 133–37, Prayer for Relief.)

Defendants initially moved to dismiss the TAC on February 17, 2023 (ECF No. 41), and Plaintiff filed an opposition on May 28, 2023 (ECF No. 57). On June 9, 2023, that motion was administratively terminated pending it being fully briefed. (ECF No. 62). On June 28, 2023, Defendants refiled their motion (ECF No. 63), Plaintiff refiled her opposition (ECF No. 64), and

---

[5] Plaintiff filed the Third Amended Complaint ("TAC") in her capacity as Administrator of the Estate of Shamir Shawn Segura, both individually and on behalf of the survivors and beneficiaries entitled to make claims as set forth in the TAC and as prescribed by law. (ECF No. 38 ¶¶ 1–2.)

[6] Plaintiff labeled this complaint as the "Third Amended Complaint" even though it served as Plaintiff's second amended complaint.

Defendants filed their reply (ECF No. 65).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)[7]

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, Civ. A. No. 12-3922, 2013 WL 1163483, at *2 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994)). "In order to have subject matter jurisdiction, a District Court must be able to exercise either federal question jurisdiction or diversity jurisdiction." *Trinh v. Off. of Recs. Phila.*, 779 F. App'x 118, 119–20 (3d Cir. 2019) (citing 28 U.S.C. §§ 1331 & 1332). "[I]t is the plaintiff who bears the burden of proving that the federal court has jurisdiction." *McCracken v. Murphy*, 129 F. App'x 701, 702 (3d Cir. 2005) (citations omitted); *see also Wright v. N.J./Dep't of Educ.*, 115 F. Supp. 3d 490, 495 (D.N.J. 2015) ("It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction in order to defeat a motion under Rule 12(b)(1)."). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a

---

[7] "A motion to dismiss based on [the] Eleventh Amendment, or sovereign immunity, is appropriate under both Rule 12(b)(1) and Rule 12(b)(6)." *In re Estate of McKloskey v. Twp.*, Civ. A. No. 15-04171, 2017 WL 2600456, at *1 (D.N.J. June 15, 2017) (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999), and then citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996)).

factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id*. (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id*. (alteration in original) (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings'" and "[n]o presumptive truthfulness attaches to [the] plaintiff's allegations." *Id*. (first alteration in original) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id*. (quoting *Mortensen*, 549 F.2d at 891).

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Id.* at 348 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id*. at 350 (alteration in original) (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id*. (citing *Mortensen*, 549 F.2d at 892 (holding dismissal under Rule 12(b)(1) would be "unusual"

when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id*.

### B.       Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing

*Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *See id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant[.]" *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes that plaintiffs must show that the allegations of their complaints are plausible. *See id.* at 670.

While courts generally may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *See In re Rockefeller Ctr. Props. Sec. Litig.*, 184

F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III. DECISION

Defendants move to dismiss all claims against them under Rule 12(b)(1) and Rule 12(b)(6). (*See generally* ECF No. 63.) Defendants advance numerous grounds for dismissal including: (1) "Plaintiff's claims against Greystone and [the] State Defendants in their official capacities must be dismissed with prejudice on the basis of Eleventh Amendment sovereign immunity"; (2) "Plaintiff's civil rights claims are likewise barred because Greystone and [the] State Defendants in their official capacities are not 'persons' amenable to suit under either 42 U.S.C. § 1983 or the New Jersey Civil Rights Act ('NJCRA'[8])"; (3) Plaintiff's individual-capacity civil rights claims must be dismissed "because the claims are entirely devoid of any factual support or, alternatively, because [the] State Defendants are entitled to qualified immunity or because Plaintiff has not plausibly pleaded the requisites for a civil rights claim"; (4) Plaintiff fails to state a claim under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("RA"), and state

---

[8] "The NJCRA is interpreted as analogous to § 1983" and provides, in part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State . . . may bring a civil action for damages and for injunctive or other appropriate relief.

*Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) (quoting N.J. Stat. Ann. § 10:6–2).

law; and (5) the "State Defendants are otherwise entitled to immunity from suit under the New Jersey Tort Claims Act ('[NJ]TCA') under numerous provisions of the [NJ]TCA that directly apply to the claims asserted here." (ECF No. 63-1 at 1–2; *see also id.* at 9–40.)

In opposition, Plaintiff does not appear to contest that Eleventh Amendment sovereign immunity applies to Greystone and the State Defendants in their *official* capacities but argues it does not bar claims against Defendants in their *individual* capacities, and therefore the latter claims should not be dismissed. (*See* ECF No. 64 at 14–15 (emphasis added).) Plaintiff concedes Greystone is not a "person" for purposes of § 1983 and the NJCRA but asserts the State Defendants are "persons" subject to suit under § 1983 and the NJCRA. (*Id.* at 15.) Plaintiff also contends the State Defendants were "involved in the deprivation of constitutional rights and privileges both under the U.S. Constitution and the New Jersey State Constitution, and their conduct was under color of state and federal law as individuals affiliated with Greystone in the treatment of Davis and the failure to protect Segura." (*Id.* at 15–16.)

Plaintiff further states the TAC sets forth sufficient specific claims and facts to survive a Rule 12(b)(6) motion to dismiss. (*Id.* at 17; *see also id.* at 17–31.) Plaintiff asserts that to the extent the Court finds any of her claims to be deficiently pled, then the Court should grant leave to replead those claims. (*Id.* at 42.) Additionally, Plaintiff submits that none of her claims should be dismissed, but if the Court dismisses her federal claims, then it should remand this matter to state court to determine her remaining state law claims. (*Id.* at 41.)

In reply, Defendants concede Eleventh Amendment sovereign immunity does not bar a § 1983 claim brought against a defendant in their individual capacity for their acts or omissions. (ECF No. 65 at 2.) But Defendants argue Plaintiff's claims against them in their individual capacities "fail as a matter of law for a number of reasons, including the utter absence of any

11

factual allegations about personal involvement in potentially-actionable conduct by a plethora of [the] State Defendants." (*Id.* at 2–3.) Defendants maintain "the State Defendants are entitled to sovereign immunity from liability as to Plaintiff's claims for relief under § 1983 because, under black-letter law, Greystone and the State Defendants sued in their official capacities are not 'persons' subject to liability under either federal civil rights statute." (*Id.* at 3 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).) Further, Defendants contend that while Plaintiff states she sufficiently pled a claim for a conspiracy under 42 U.S.C. § 1985 and § 1986, she failed to assert she was bringing claims under these statutes in the TAC. (*See id.* at 6–7 (citing ECF No. 38).)

The Court first addresses Defendants' Rule 12(b)(1) motion for lack of subject matter jurisdiction and then addresses Defendants' Rule 12(b)(6) motion as necessary.

### A.   Plaintiff's Claims Against Defendants In Their Official Capacities Are Barred By Eleventh Amendment Sovereign Immunity

Defendants have presented the Court with a facial attack challenge to subject matter jurisdiction under Rule 12(b)(1), *see Davis*, 824 F.3d at 346, arguing that the Court must dismiss Plaintiff's claims against Greystone and the State Defendants in their official capacities for lack of subject matter jurisdiction based on Eleventh Amendment sovereign immunity. (ECF No. 63-1 at 9–12); *Curlin Med. Inc. v. ACTA Med., LLC*, Civ. A. No. 16-2464, 2016 WL 6403131, at *2 (D.N.J. Oct. 27, 2016.) In evaluating a facial attack challenge to subject matter jurisdiction under Rule 12(b)(1), the Court accepts Plaintiffs' allegations as true and considers the allegations in the light most favorable to Plaintiff. *See Gould Elecs.*, 220 F.3d at 176; *Davis*, 824 F.3d at 346.

The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

12

Const. amend. XI. "[T]he Eleventh Amendment has for over a century been held to incorporate a more general principle of sovereign immunity." *Harvey v. County of Hudson*, Civ. A. No. 14-3670, 2015 WL 9687862, at *3 (D.N.J. Nov. 25, 2015). "In general, it bars citizens from bringing suits for damages against any state in federal court." *Id.* (citing cases). Eleventh Amendment "[s]overeign immunity is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Wright*, 115 F. Supp. 3d at 494 (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). States are immune from suits in federal court brought by their own citizens, or citizens of other states, regardless of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *see also Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought . . . ."); *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) ("States retain their immunity from suit regardless of the citizenship of the plaintiff.").

The Eleventh Amendment also provides sovereign immunity to agencies, departments, and officials of the state when the state is the real party in interest in the suit. *Alabama v. Pugh*, 438 U.S. 781, 781 (1978); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002); *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). The state is a real party in interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d. Cir. 1989). "In short, sovereign immunity is appropriate if the named defendant is an arm of the state." *Love v. N.J. State Police*, Civ. A. No. 14-1313, 2016 WL 3046257, at *7 (D.N.J. May 26, 2016) (internal citation and quotation marks omitted); *see also Chisolm*, 275 F.

3d at 323. State officials in their official capacities are also immune from suit, "because it is merely another way of pleading an action against the state." *Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014); *see also Will*, 491 U.S. at 70–71.

Section 1983 claims seeking monetary damages are subject to the Eleventh Amendment sovereign immunity bar. *Will*, 491 U.S. at 58. The Eleventh Amendment likewise "denies a federal court jurisdiction to hear state-law claims that a state or its agencies violated state law." *Harvey*, 2015 WL 9687862, at *3 (citing *Pennhurst*, 465 U.S. at 121). Eleventh Amendment sovereign immunity also applies to state common law causes of action. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 355 n.l (3d Cir. 1997), *aff'd*, 527 U.S. 666 (stating that a common law unfair competition claim brought against a state-created entity "obviously could not be asserted successfully in light of the Eleventh Amendment").

However, there are three exceptions to state sovereign immunity under the Eleventh Amendment: "1) where Congress abrogates the state's immunity pursuant to a valid exercise of its Fourteenth Amendment power; 2) where a state has validly waived its sovereign immunity and 3) where prospective injunctive relief is sought against state officials to end continuing or ongoing violations of federal law." *Wright*, 115 F. Supp. 3d at 494  (citing *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)). Accordingly, "[u]nder the Eleventh Amendment, state officials acting in their official capacity cannot be sued unless Congress specifically abrogates the state's immunity or the state waives its own immunity." *Balsam v. Sec'y of New Jersey*, 607 F. App'x 177, 183 (3d Cir. 2015) (citing *Will*, 491 U.S. at 66, 70–71). "That a State may not be sued without its consent is a fundamental rule of jurisprudence." *Pennhurst*, 465 U.S. at 98 (quoting *Ex parte New York*, 256 U.S. 490, 497 (1921)); *see also PennEast Pipeline*, 141 S. Ct. at 2258 ("A State may of course consent to suit, although such consent must be 'unequivocally expressed.'").

14

Additionally, the Eleventh Amendment does not bar suits against state officials in their personal or individual capacity because "the plaintiff seeks recovery from the personal assets of the individual," and "the state is not the real party in interest." *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991). *See, e.g.*, *Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023) (noting "state employees in their individual capacities may be liable for damages under § 1983, even when the conduct in question is related to their official duties" and that "state officers *can* be sued for damages in their official capacities for purposes of the ADA and RA, unless barred by the Eleventh Amendment"); *Pratt v. Ann Klein Forensic Ctr.*, Civ. A. No. 15-05779, 2016 WL 660664, at *4 (D.N.J. Feb. 18, 2016) (denying defendants' motion to dismiss plaintiff's § 1983 claims against state officials sued in their individual capacities); *Cherry v. Whitehead*, Civ. A. No. 09-04161, 2012 WL 253138, at *3, *9 (D.N.J. Jan. 25, 2012) (denying defendants' motion to dismiss plaintiff's § 1983 claims brought against state officials including Greystone employees to the extent they were asserted against those officials in their individual capacities).

Here, the Court concludes Defendants Persichilli, Johnson, Mielke, Ciaston, Former AG Grewal, and Governor Murphy are state officials for purposes of sovereign immunity and are immune from suit in their official capacities. *See Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[,]" and as such, "is no different from a suit against the State itself." (citations omitted)); *First Response v. New Jersey*, Civ. A. No. 21-1458, 2022 WL 3138206, *4 (D.N.J. Aug. 4, 2022) (holding an employee of the New Jersey Department of Health is a state official and therefore entitled to sovereign immunity from suit in their official capacity); *Wilson v. Biden*, Civ. A. No. 21-16994, 2021 WL 5416709, at *2 (D.N.J. Nov. 18, 2021) (holding Governor Murphy is a state official and therefore entitled to sovereign immunity from suit in his official capacity);

15

*Smith v. Smith*, Civ. A. No. 19-9120, 2020 WL 4199782, at *4 (D.N.J. July 22, 2020) (holding Attorney General Grewal is a state official and therefore entitled to sovereign immunity from suit in his official capacity).

The Court also finds Greystone is immune from suit under the Eleventh Amendment as an arm of the state because it was created by statute and is state-operated and state-funded. *See* N.J. Stat. Ann. §§ 30:1-7, 30:4-160; *Cherry*, 2012 WL 253138, at *1. Hospitals that are created by statute, state-controlled, and state-funded are accorded sovereign immunity as arms of the state. *See Pratt,* 2016 WL 660664, at *3. Employees of such hospitals sued in their official capacity are also accorded sovereign immunity as state officials. *See Matthews v. Norristown State Hosp.*, 528 F. App'x 115, 118–19 (3d Cir. 2013) (citations omitted). Accordingly, the Court concludes Defendants Carter, McQuaide, Frey, Dr. Mellk, Dr. Akerele, and Dr. Hassan are also similarly immune from suit in their official capacities as Greystone employees. *See id.*

Additionally, the Court finds that none of the limited exceptions to state sovereign immunity under the Eleventh Amendment applies to either Greystone or the State Defendants because Congress has not specifically abrogated the state's immunity, New Jersey has not waived its immunity, and Plaintiff is not seeking prospective injunctive relief against Defendants. *See Balsam*, 607 F. App'x at 183; *Will*, 491 U.S. at 66, 70–71; *see also* ECF No. 38. While the New Jersey Tort Claims Act ("NJTCA") "allows suits against public entities and their employees in state courts," it "does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver." *Hyatt v. County of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009) (citing N.J. Stat. Ann. § 59:2–2(a)).

Therefore, all of Plaintiff's claims against Greystone are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction, and all of Plaintiff's claims against the State Defendants in

their official capacities are likewise **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.[9]

### B.   Plaintiff Fails to State Any Claim Against Nine Defendants

Plaintiff fails to state a claim in the TAC against nine of the State Defendants in their individual capacities. Plaintiff conclusorily alleges Defendants Persichilli, Johnson, Mielke, Ciaston, Former AG Grewal, and Governor Murphy "all had a role in [Greystone's] administration" and with respect to Mielke, that the Board of Trustees of Greystone wrote to Mielke and others "raising concerns about the significant staffing shortages [at Greystone] and increased census along with a significant change in the diversity of the patient population which stretched the available staff capabilities beyond reasonable performance." (ECF No. 38 ¶¶ 40–41.) These bare allegations as to these six State Defendants are insufficient to state any claim against them in their individual capacities. *See Iqbal*, 556 U.S. at 678–79. Therefore, Plaintiff's claims against Defendants Persichilli, Johnson, Mielke, Ciaston, Former AG Grewal, and Governor Murphy in their individual capacities are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

Likewise, with respect to Defendants Carter, McQuaide, and Frey, Plaintiff simply alleges that these defendants as Greystone employees "all had a role in [Greystone's] administration" and with respect to McQuaide, that the Board of Trustees of Greystone wrote to McQuaide and others "raising concerns about the significant staffing shortages [at Greystone] and increased census

---

[9] Defendants also argue they are immune from suit in their official capacities because they are not "persons" amenable to suit under § 1983 or the NJCRA. (ECF No. 63-1 at 11–12.) However, Plaintiff contends "[t]he [S]tate [D]efendants, with the exception of [Greystone] itself, are 'persons' for purposes of § 1983 and subject to suit under the N.J.C.R.A[.]" (ECF No. 64 at 15.) The Court need not address these arguments in light of the Court's holding that the State Defendants are immune from suit in their official capacities under the Eleventh Amendment.

along with a significant change in the diversity of the patient population which stretched the available staff capabilities beyond reasonable performance." (ECF No. 38 ¶¶ 40–41.) These bare allegations are similarly insufficient to state any claim against these three Defendants in their individual capacities. *See Iqbal*, 556 U.S. at 678–79. Therefore, Plaintiff's claims against Defendants Carter, McQuaide, and Frey in their individual capacities are likewise **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

The Court next addresses Plaintiff's claims against the three remaining State Defendants, Dr. Akerele, Dr. Mellk, and Dr. Hassan, in their individual capacities.

### C.    Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983

In Count I of the TAC, Plaintiff alleges Defendants violated 42 U.S.C. § 1983 by, among other things, "negligently and[/]or intentionally refrain[ing] from reasonable and necessary actions to protect [Segura] and his rights"—namely, his "right . . . to be free from such invasions of his person, safety and bodily integrity and a right to protection from assault and lethality by Defendant Davis" and his "right due to the relationship that existed between him and the State of New Jersey as an involuntarily committed patient to be protected from the foreseeable assault by Defendant Davis." (ECF No. 38 ¶¶ 70–76.) A plaintiff may have a cause of action under § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the deprivation of a right secured by the Constitution or laws of the United States and, second, the

alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). A § 1983 plaintiff cannot rely solely on a *respondeat superior* theory of liability. *See Alexander v. Gennarini,* 144 F. App'x 924, 925 (3d Cir. 2005) ("Section 1983 liability cannot be found solely on the basis of *respondeat superior.*").

Instead, for liability under § 1983 to attach, a defendant must have personal involvement in a constitutional violation. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, the plaintiff . . . must plead that each Government-official defendant, through [the official's] own individual actions, has violated the Constitution."); *Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 71 (3d Cir. 2011) ("It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct."). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted). However, "[n]egligence by public officials is not actionable as a due process violation." *Berg v. County of Allegheny*, 219 F.3d 261, 274 (3d Cir. 2000) (citations omitted); *Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 732–33 (D.N.J. 2015) ("Claims of negligence do not rise to the level of constitutional protection under § 1983, even when unfortunate harm occurs." (citations omitted)).

Additionally, the state-created danger theory is a mechanism through which plaintiffs can establish constitutional violations under § 1983, and liability under this theory "may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)). To prevail under the state-created

danger theory, the Third Circuit has held that plaintiffs must prove the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford*, 456 F.3d at 304–05 (citing *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006)). "[T]he shocks the conscience standard is somewhat vague" and "[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *In re Estate of Smith v. Marasco*, 430 F.3d 140, 153, 156 (3d Cir. 2005) (alteration in original) (quoting *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999)). For example, "deliberate indifference to a prisoner's medical needs may be sufficiently shocking, while '[a] much higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider the risks.'" *In re Estate of Smith v. Marasco*, 318 F.3d 497, 508 (3d Cir. 2003) (quoting *Miller*, 174 F.3d at 375).

Here, Plaintiff alleges Dr. Akerele, Dr. Mellk, and Dr. Hassan "all had a role in [Greystone's] administration"; "were members of the treatment team responsible for the appropriate care, treatment and assessment of [Segura]"; and were responsible for determining whether staffing at Greystone was "sufficient to preserve the protection and safety of persons at Greystone." (*See* ECF No. 38 ¶¶ 39–40.) Plaintiff also alleges that despite Segura being ordered to be on one-to-one observation, Dr. Akerele ordered Segura's one-to-one observation be discontinued, and Dr. Mellk "recklessly ordered" Segura to be removed from one-to-one

observation. (*Id.* ¶¶ 58, 66–67.) Plaintiff further alleges Dr. Akerele interfered with Segura's scheduled transfer to another unit within Greystone by changing the order "last minute," causing confusion among the Greystone staff, of which Davis took advantage to harm Segura. (*Id.* ¶¶ 67–68.) According to Plaintiff, Segura was scheduled to be transferred from the unit under Dr. Gormus's care to the unit under Dr. Hassan's care. (*Id.* ¶ 67.) Plaintiff separately alleges Dr. Hassan instructed non-party Dr. Gormus "to alter the transfer and change the unit" for an unidentified patient, but it is not clear if or how this allegation relates to Segura. (*Id.* ¶ 65.)

Assuming the allegations related to these three doctors are true, and assuming for purposes of this Opinion that these three doctors were personally involved, Plaintiff has not sufficiently pled facts showing a § 1983 violation because Plaintiff does not adequately allege a deprivation of a constitutional right by persons acting under color of state law. While Plaintiff's allegations could plausibly show negligence, negligence is not sufficient to sustain a § 1983 violation. *See Lockhart*, 170 F. Supp. 3d at 732–33. Plaintiff also has not adequately pled a state-created danger involving conduct that "shocks the conscience." *See Sanford*, 456 F.3d at 304–05. Therefore, Plaintiff's claims against Defendants Dr. Akerele, Dr. Mellk, and Dr. Hassan in their individual capacities are dismissed without prejudice for failure to state a claim.

Further, to the extent Plaintiff is asserting any claims under 42 U.S.C. § 1985 or § 1986, the Court concludes Plaintiff has not sufficiently pled allegations to sustain a claim under either of those two statutes, and those claims are also dismissed without prejudice. Plaintiff only mentions § 1985 once in the TAC (*see* ECF No. 38 ¶ 77), seemingly in passing, and does not reference § 1986 anywhere in the TAC, though Plaintiff references both § 1985 and § 1986 in her Opposition (*see* ECF No. 64 at 28–30). Moreover, the applicable statute of limitations for a claim under § 1986 is one year. *See* 42 U.S.C. § 1986. The events in the TAC occurred on December 31, 2019, but

Plaintiff did not initiate this action until more than year later, on May 24, 2021. (*See* ECF No. 1.) Therefore, Plaintiff's claims under § 1985 are dismissed for failure to state a claim, and to the extent Plaintiff is asserting any claims under § 1986, those claims are dismissed as untimely, as well as for failure to state of a claim. *Cf. Brookhart v. Rohr*, 385 F. App'x 67, 70 (3d Cir. 2010) ("Section 1985(3) of title 42 requires a plaintiff to allege that invidious racial or otherwise class-based discriminatory animus lay behind the defendants' actions, and he must set forth facts from which a conspiratorial agreement between the defendants can be inferred. [Plaintiff] did not allege that he was a member of a protected class, and his conclusory allegations of a deprivation of his constitutional rights are insufficient to state a section 1985(3) claim. In order to maintain a cause of action under 42 U.S.C. § 1986, a plaintiff must show the existence of a section 1985 conspiracy. Because [plaintiff] failed to allege a section 1985(3) violation, he could not assert a cause of action under section 1986." (citations omitted)).

Therefore, Count I of the TAC is **DISMISSED WITHOUT PREJUDICE** as to the State Defendants for failure to state a claim.[10]

---

[10] Defendants also argue they are entitled to qualified immunity as to Plaintiff's § 1983 and NJCRA claims. (ECF No. 63-1 at 29–32.) However, Plaintiff contends Defendants "have not established that they have qualified immunity in this matter." (ECF No. 64 at 32.) Because the Court finds Plaintiff does not state a claim upon which relief can be granted for her claims brought under § 1983, the Court does not reach the qualified immunity analysis. Additionally, the Court notes it would be premature at this time to determine whether Defendants are entitled to qualified immunity. *See Cherry*, 2012 WL 253138, at *8 (finding that a plaintiff sufficiently alleged against certain defendants individually claims showing a constitutional right was violated and that plaintiff was "entitled to discovery to further develop the record"; the court stated "[i]t would be premature at this juncture to determine whether all Defendants were acting in their capacities as employees and administrators of a state psychiatric institution, under state control, are entitled to qualified immunity protection"). Further, the Court finds the TAC lacks the factual specificity required for the Court to engage a meaningful qualified immunity analysis.

**D.    Plaintiff Fails to State a Claim Under the Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution**

In Count II of the TAC, Plaintiff alleges Defendants violated the Due Process and Equal Protection Clause of the Fifth and Fourteenth Amendments and violated the Eighth Amendment of the United States Constitution by engaging in affirmative actions including but not limited to denying "the right to a safe and humane physical and psychological environment, the right to be free from State-created danger and from the deliberate indifference to medical needs, and the right to be protected from patient-on-patient assaults through proper patient supervision and staff training[.]" (ECF No. 38 ¶ 90; *see also id.* ¶¶ 77–91.) According to Plaintiff, Defendants (1) "engaged in the affirmative acts alleged [] that created a danger to [Segura] and/or left [Segura] more vulnerable than had Defendants not engaged in those affirmative acts alleged"; (2) engaged in conduct that "demonstrate[d] a degree of culpability that shocks the conscience"; (3) violated Segura's rights, "directed others to violate them, or had knowledge of and acquiesced in the violations of subordinates, secured by the Due Process Clause and Equal Protection Clause of the Fifth and Fourteenth Amendment of the United States Constitution"; (4) "purposefully discriminated against and caused cognizable harm to [Segura] at Greystone based on his disabilities"; and (5) "failed to exercise appropriate judgment" in attending to Segura's medical needs. (*Id.* ¶¶ 79–87.) Plaintiff further alleges "members of [Segura's] treatment team were aware of, and the other Defendants knew or should have known of, Defendant Davis's violent propensities" and that Defendants failed to "take any precautions to protect [Segura] from a deadly assault by Defendant Davis." (*Id.* ¶ 46.)

The Fifth Amendment provides "No person shall be deprived of life, liberty, or property, without due process of law;" and the Fourteenth Amendment similarly provides "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any

person within its jurisdiction the equal protection of the laws." U.S. Const. amends. V, XIV. "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "The touchstone of due process is the protection of the individual against arbitrary action of government." *Miller*, 174 F.3d at 374–75 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). "To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'" *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). "Critically, under this standard, officials will not be held liable for actions that are merely negligent." *Id.* (citing *Lewis*, 523 U.S. at 849). "Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but 'less than intentional conduct, such as recklessness or 'gross negligence,' is a matter for closer calls." *Lewis*, 523 U.S. at 849 (citation omitted).

"In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf . . . which is the 'deprivation of liberty' triggering the protections of the Due Process Clause"; it is not the State's "failure to act to protect [the individual's] liberty interests against harms inflicted by other means" that is the "deprivation of liberty." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). "The Supreme Court has long established that '[a]s a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013), *as amended* (June 14, 2013) (alteration in original) (quoting *DeShaney*, 489 U.S. at 197). "The Due Process Clause forbids the state *itself* from depriving 'individuals of life, liberty, or property without "due process of law,"' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure

24

that those interests do not come to harm through other means.'" *Id.* (quoting *DeShaney*, 489 U.S. at 195).

"Although as a general rule, 'the state has no affirmative obligation to protect its citizens from the violent acts of private individuals,' the 'state-created danger' theory of liability is an exception to this rule." *Hansell v. City of Atl. City*, 152 F. Supp. 2d 589, 603 (D.N.J. 2001), *aff'd*, 46 F. App'x 665 (3d Cir. 2002) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997)). Courts interpreting this language have determined "a state-created danger exists '[w]hen state actors knowingly place a person in danger, the due process clause of the constitution . . . render[s] them accountable for the foreseeable injuries that result from their conduct." *Id.* (alteration in original) (citation omitted). Accordingly, "liability under the due process clause may be imposed 'where the harm—though at the hands of a private actor—is the product of state action that legitimately can be characterized as affirmative conduct.'" *Id.*

The Eighth Amendment proscribes the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. However, the Fourteenth Amendment rather than the Eighth Amendment is the appropriate source to determine the rights of involuntarily committed individuals as opposed to incarcerated individuals. *See Brown ex rel. Payton v. Ancora Psychiatric Hosp.*, Civ. A. No. 11-07159, 2012 WL 4857570, at *1 (D.N.J. Oct. 11, 2012) (citing *Youngberg v. Romeo*, 457 U.S. 307 (1983)). In *Youngberg*, the Supreme Court rejected applying the Eighth Amendment's "deliberate indifference" standard to claims brought by civilly committed individuals under the Fourteenth Amendment and instead "adopted the 'professional judgment standard,' which provides that an official is liable only if a 'decision . . . is . . . a substantial departure from accepted professional judgment, practice, or standards.'" *Mullen v. Dep't of Hum. Servs.*, Civ. A. No. 13-00296, 2016 WL 356030, at *2 (D.N.J. Jan. 27, 2016) (alterations in original) (citing *Youngberg*, 457 U.S. at

323–25). "[T]he substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety" from themselves and others." *DeShaney*, 489 U.S. at 199 (citing *Youngberg*, 457 U.S. at 314–25). In the Third Circuit, the professional judgment standard more closely resembles a recklessness or gross negligence standard and, "like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1146 (3d Cir. 1990). Additionally, the Third Circuit has held that "the *Youngberg* professional judgment standard should [be] applied to the primary care professionals, supervisors and administrators named as defendants." *Id.* at 1139.

Here, Plaintiff has not sufficiently pled facts showing a constitutional due process violation against Defendants Dr. Akerele, Dr. Mellk, and Dr. Hassan in their individual capacities. Plaintiff has not adequately alleged how the conduct of these three Defendants—including decisions regarding what unit Segura should have been in or whether one-on-one observation was required for Segura—shocks the conscience or shows "a substantial departure from accepted professional judgment, practice, or standards." *See Mullen*, 2016 WL 356030, at *2.

Therefore, Count II of the TAC is **DISMISSED WITHOUT PREJUDICE** as to the State Defendants for failure to state a claim.

### E.    Plaintiff Fails to State a Claim Under the ADA and the RA

In Counts III and IV of the TAC, Plaintiff alleges Defendants violated Title II of the ADA and Section 504 of the RA by subjecting Segura to discrimination; excluding him from participating in or denying "the benefits of the services, programs, or activities which Greystone is required to provide"; and by having violated and continuing to violate Plaintiff's rights under

the RA and the regulations promulgated thereto. (ECF No. 38 ¶¶ 92–109.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." *Durham*, 82 F.4th at 225 (quoting 42 U.S.C. § 12132). To state a claim under Title II of the ADA, individuals must demonstrate that: "(1) [they are] qualified individual[s]; (2) with a disability; (3) [who were] excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of [their] disability." *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) (citation omitted). If the plaintiffs seek compensatory damages under Title II, like Plaintiff is here, they "must also show intentional discrimination under a deliberate indifference standard." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019). Under the deliberate indifference standard, plaintiffs must allege that the defendant "had 'knowledge that a federally protected right is substantially likely to be violated,' . . . and (2) the [entity] failed 'to act despite that knowledge.'" *Id.* at 292.

"The elements of a claim under the RA are the same, except that the plaintiff must also show that the program in question received federal dollars." *Durham*, 82 F.4th at 225. Section 504 of the RA states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of [the individual's] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794. Courts "consider [] Title II and Section 504 claims together because 'the substantive standards for determining liability [for both types of claims] are the same." *Furgess*, 933 F.3d at 288.

Here, Plaintiff has not sufficiently pled facts showing Defendants in their individual

capacities violated the ADA or the RA with respect to Segura. Plaintiff has not alleged any facts indicating Segura was subjected to discrimination because of his disability or that he was "excluded from participation in or denied the benefits of the services, programs, or activities of a public entity" because of his disability. Plaintiff likewise has not alleged facts showing the State Defendants intentionally discriminated against Segura under the deliberate indifference standard.

Therefore, Counts III and IV of the TAC are **DISMISSED WITHOUT PREJUDICE** as to the State Defendants for failure to state a claim.[11]

### F. The Court Declines Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims

Having "dismissed all claims over which [this Court] has original jurisdiction" with respect to Defendants, 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining state law claims Plaintiff asserts against Defendants in Counts V through IX of the TAC. (*See* ECF No. 38 ¶¶ 110–37); *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 174 (3d Cir. 2009). Therefore, Counts V, VI, VII, VIII, and IX of the TAC are **DISMISSED WITHOUT PREJUDICE** as to Defendants for lack of jurisdiction.[12]

### IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 63) is **GRANTED**, and Plaintiff's TAC is dismissed without prejudice as to Greystone and the State Defendants. Plaintiff may, within thirty (30) days of the date of this Opinion, file a **_final_** fourth

---

[11] Defendants also argue that "[e]ven if Plaintiff had pled specific facts with respect to the ADA and RA claims, only public entities, not individuals, may be held liable under the ADA and RA." (ECF No. 63-1 at 33 (citing cases).) The Court need not address this argument because the Court finds Plaintiff did not sufficiently allege facts to state a claim under the ADA or the RA.

[12] Defendants also contend they are entitled to immunity under the NJTCA as to Plaintiff's state law claims. (ECF No. 63-1 at 35–40.) The Court need not address this argument in light of the Court's decision to decline supplemental jurisdiction over these claims as to Defendants.

amended complaint curing the deficiencies addressed herein. Defendants may respond to the fourth

amended complaint, if filed, as appropriate. An appropriate Order follows.


*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  February 5, 2024

29